ADRICO REALTY CORPORATION, Appellant, *v.* CITY OF NEW YORK, Respondent.

(Argued November 21, 1928; decided December 31, 1928.)

*M. S. Lockhart* and *John L. Wilkie* for appellant. The assessment levied against the plaintiff was illegal and void. (L. 1901, ch. 466, § 391.) The defendant, having accepted a payment conditioned upon the retention by the plaintiff of the right to recover the same, is estopped from asserting that the payment was voluntary. (*Fuller v. Kemp*, 138 N. Y. 231.) The payment by plaintiff was under duress and may be recovered. (*Jex v. Mayor of New York*, 103 N. Y. 536; *Matter of City of New York*, 114 App. Div. 519; *Bowns v. May*, 120 N. Y. 357; *Poth v. City of New York*, 151 N. Y. 16; *Bruecher v. Village of Port Chester*, 101 N. Y. 240; *Ætna Insurance Co. v. Mayor of New York*, 153 N. Y. 331; *Pell v. Mayor of New York*, 31 Misc. Rep. 664; *People ex rel. Wessell, Nickel & Gross v. Craig*, 236 N. Y. 100; *Mayer v. Mayor of New York*, 101 N. Y. 284.)

*George P. Nicholson*, Corporation Counsel (*Vine H. Smith*, *Matthew J. Troy* and *J. Joseph Lilly* of counsel), for respondent. Plaintiff's payment to the collector of assessments and arrears is final and beyond recovery because it was made voluntarily, without compulsion or duress, and with full knowledge of the facts. (*Redmond v. Mayor, etc., of New York*, 125 N. Y. 632; *Tripler v. Mayor, etc., of New York*, 125 N. Y. 617; *Vanderbeck v. City of Rochester*, 122 N. Y. 285; *Pooley v. City of Buffalo*, 122 N. Y. 592; *Vaughn v. Village of Portchester*, 115 N. Y. 637; *Phelps v. Mayor, etc., of New York*, 112 N. Y. 216; *Haven v. Mayor, etc., of New York*, 67 App. Div. 90; 173 N. Y. 611; *Matter of Village of Delhi*, 201 N. Y. 408.) The case at bar presents no such special circumstances, either of agreement or of duress, as to

constitute an exception to the general rule which precludes recovery of voluntary payments. (*Flower* v. *Lance*, 59 N. Y. 603; *Union Pac. R. R. Co.* v. *Commissioners*, 98 U. S. 541; *Vaughn* v. *Portchester*, 115 N. Y. 637; *Boss* v. *Hutchinson*, 182 App. Div. 88; *Railroad Co.* v. *Commissioners*, 98 U. S. 541; *Little* v. *Bowers*, 134 U. S. 547; *Cheseborough* v. *U. S.*, 192 U. S. 253; *Redmond* v. *Mayor, etc.*, 125 N. Y. 632; *Tripler* v. *Mayor, etc.*, 125 N. Y. 617.)

CRANE, J. This appeal brings once more before this court the law of voluntary payments. The principle is well established that a voluntary payment of a tax made under a mistake of law, but with a full knowledge of all the facts, cannot be recovered. (Cooley on Taxation, vol. 3, sec. 1282; 48 American Law Reports Anno. p. 1382.) This court in *Matter of Village of Delhi* (201 N. Y. 408) stated the rule in this language: " Where an assessment is void on its face and a person without duress in fact pays the tax levied upon such assessment, it is a voluntary payment and cannot be recovered. * * * Where an assessment although valid on its face, but in fact illegal and void, is paid by a person with knowledge of the facts which render the assessment void and without duress in fact it is a voluntary payment."

These are general rules, easy to understand, easy to express. So frequently have they been used that we are tempted to fall into the habit of using them like a yardstick, as if they gave an accurate and unvarying measure. Like all general rules, common and frequent use may dull our sense of their meaning and of their early application leading us to overlook their exceptions and limitations. Payment to trustees in bankruptcy, for instance, is an exception. (*Ex parte James*, L. R. 9 Ch. App. 609–614.) Few rules of law can be applied without examination or analysis. The notion that the fundamental principles of law have been modified or changed

when new circumstances present new phases of application is a mistaken one. We do not make the facts to fit a rigid formula, but rather re-examine our formulæ to see whether they fit the facts. Therefore, this rule of voluntary payment is dependent upon what is considered voluntary and what duress, also upon what is a mistake of law, as distinguished from a mistake of fact, and the determination of these questions varies the application of the rule. When we speak of duress in this connection, it does not necessarily mean personal fear or the use of force, but rather that pressure of circumstances which compels the will of man to yield to an exaction or a payment to release his property from some illegal hold upon it. Thus, paying unlawful freight charges to get personal property has been held to be involuntary. (*Harmony* v. *Bingham*, 12 N. Y. 99, and cases there reviewed.) Money paid " through necessity and the urgency of the case " was held not to be a voluntary payment.

The expression which runs through the cases is that duress exists when the payment of money becomes necessary to obtain the immediate liberty of person or the possession of property. (*Tripler* v. *Mayor*, 125 N. Y. 617, 626.) This statement is the embodiment of a principle and has not yet crystallized around the particular facts of the cases in which it is stated. It still yields to the reason of other situations. Judge FOLGER, of this court, in *Peyser* v. *Mayor* (70 N. Y. 497) has stated the reason for this rule of voluntary payment, which lies behind these various expressions of the principle.

" The reason of this principle is, that a person shall not be permitted, with the knowledge that the demand made upon him is illegal and unfounded, to make payment without resistance, where resistance is lawful and possible, and afterwards to choose his own time to bring an action for restoration, when, perchance, his adversary has lost the evidence to sustain his side. I have spoken of coercion

in fact and coercion by law. By the first I mean that duress of person or goods, where present liberty of person or immediate possession of goods is so needful and desirable, as that an action or proceedings at law to recover them will not at all answer the pressing purpose."

Let this reasoning be the heart of this rule of voluntary payment giving it life sufficient to survive under modern conditions. With this concatenation of rule and reason, let us approach the facts of this case.

The charter of the city of New York, by section 391, provides that no street pavements shall be removed or disturbed without a permit from the President of the Borough and "whenever any portion of the pavement * * * shall have been removed * * * and * * * shall not be relaid in a manner satisfactory to the president of said borough, the said president may cause a notice, in writing, to be served upon the person or corporation by whom the same was removed; or * * * upon the owner * * * requiring such person * * * to have such pavement properly relaid within five days after service of such notice." The section then provides that in case such work is not done, pursuant to the notice, the Borough President may do the work and certify the cost to the Comptroller "with a description of the lot or premises to improve which such removal was made." The Comptroller thereupon shall pay the bill "and the amount so paid shall become a lien and charge upon the premises so described, and, on being certified by the comptroller to the collector of assessments and arrears, may be collected in the same manner that arrears and water rates are collected under the direction of such collector of assessments and arrears." Title V of the charter provides for the sales of lands for taxes, assessments and water rates. Sections from 1026 to 1039 give the procedure, a summary of which is all that is necessary here. The lien created under section 391 draws interest as a penalty at the rate of 7 per cent per annum. After

remaining unpaid for a term of three or four years, the tax lien is sold to the highest bidder, who is to bid according to a rate of interest to be allowed, and who thereafter may foreclose the lien as a mortgage or any other lien upon real property. The main point for our purpose in this procedure is that no action is necessary to establish the lien; it is created by the certificate of the Borough President to the Comptroller and by the Comptroller to the Collector of Assessments and Arrears. A penalty for non-payment is 7 per cent. To redeem the property from the lien, it is necessary not only to pay all penalties, but the cost of advertising and other expenses created by the act.

The plaintiff is a foreign corporation duly authorized to do business in the State of New York. It was the owner in fee simple of the premises known as Nos. 4 to 16 West Thirty-fifth street, in the borough of Manhattan, New York city. These premises were subject to a mortgage for $1,600,000 held by the Mutual Life Insurance Company, which provided that the mortgagee at its option could declare the entire principal sum due if taxes, assessments, etc., were not paid within ninety days after they became due. The premises were leased to James McCreery & Co., a domestic corporation, which carried on a department store business. In 1914 the city of New York built a new sewer in Thirty-fifth street in front of the plaintiff's premises. From time to time after the construction of this sewer, the pavement sank and the street had to be filled in and regraded.

Some time in September or October, 1921, a considerable shrinkage occurred over the manhole in front of the entrance to plaintiff's building, which the city filled in and regraded.

On November 7, 1921, there was a break in the valve and the water service pipe leading from the street to the plaintiff's premises. The settling of the ground in the street had caused a break in the pipe.

On November 17, 1921, the President of the Borough of Manhattan caused to be served upon the owner or occupant a notice under section 391 of the Greater New York charter, referred to above. It read:

" You will please take notice that 175 sq. yds. of pavement have been destroyed by leak on Water Service leading to premises No. 4 to 6 W. 35th St.

" As provided by Section 391 of the Greater New York Charter, you are hereby notified to have such pavement properly relaid within five (5) days after service of this notice."

The work called for by the notice not having been done, the city relaid the pavement, and on December 12, 1921, demanded from the owner, the plaintiff herein, the sum of $2,241.09 for repairing 388 square yards of pavement.

On March 18, 1922, the amount of the bill was certified as a lien by the Comptroller to the Collector of Assessments and Arrears, pursuant to the provisions of the charter, above referred to. This certificate used these words: " Said pavement having been destroyed because of shutting off of live tap." The Collector of Assessments and Arrears also notified the owner that this amount had become a lien upon its property, pursuant to section 391 of the charter. According to title V thereof, for the collection of assessments and water rates, the Comptroller gave public notice by advertisement in the press that this assessment for the repair of the pavement had become a lien upon the premises and " unless the amount assessed for benefit on any person or property shall be paid on or before May 22, 1922, which is sixty days after the date of said entry of the assessment, interest will be collected thereon at the rate of 7 per cent per annum to be calculated from ten days after the date of said entry to the date of payment, as provided by Sections 159 and 1019 of the Greater New York Charter."

In January of 1923 the mortgagee of the plaintiff's premises became insistent upon the removal of the lien,

and the plaintiff paid the assessment with interest and penalties by a check for $2,363.23. The payment was made under protest. This action has been brought to recover this payment.

Two considerations concern us in reviewing this statement of the case. The lien was regular on its face. Nothing in the records showed it to be illegal. Whether the work was necessitated by the acts of the owner or by the acts of the city was a question of fact. The owner insisted that the cave-in of the street was due to a defective sewer. The city claimed, and still claims, that it was due to a leak in the owner's premises. The certificate of the Deputy Comptroller stated, " said pavement having been destroyed, because of shutting off of live tap."

Under section 391 of the charter, the work of repaving could only be charged to the owner when it was done for the improvement of his house or lot, or for the purpose of constructing vaults, digging cellars, laying foundations, making sewer connections, or repairing sewers or pipes and the like. The city could not charge to the owner the cost of repairs due to its own neglect or carelessness. Here was a question of fact. Who was to decide it? Under these circumstances, are we to put upon the plaintiff all the burden of determining the accuracy of the facts? It may be charged with a knowledge of the law, but not with the knowledge of those facts which being disputed, must ultimately be decided by a court. Even upon the trial, the judge decided the facts against the plaintiff, holding, as he stated upon the motion to dismiss the complaint: " The court has ruled that this was not a void assessment. I think the authority was conferred under section 391. I do not think you have made out a cause of action against the city. I will grant the motion."

The plea of the city before this court now is that the payment was voluntary because made under a mistake of law with a full knowledge of facts which the court has

found are not the facts. This rule that a party cannot recover money paid under a mistake of law, having knowledge of all the facts which made the payment unnecessary, does not refer to a situation like this, where facts are not clear, are in dispute, and the law is dependent upon the facts. All the cases referred to in this opinion, where this rule has been applied, relate to conceded facts well known to the party making the payment, which rendered the assessment "utterly void." There was no payment here, in my judgment, under a mistake of law, where the law (in this case the application of section 391 of the charter) was dependent upon the facts, and those facts depend upon disputed oral testimony. A payment under such circumstances to relieve the pressure of a lien upon real property carrying heavy penalties is a payment under a mistake of law mingled with a mistake or confusion of the facts, and not purely under a mistake of law.

The next consideration which confronts us upon this statement of the case is whether the payment was voluntary, within the meaning of the rule. The city automatically placed a lien upon the plaintiff's property. The plaintiff was notified by the city that unless the lien was paid it would carry a penalty of 7 per cent interest per annum. What was the purpose of 7 per cent, which was more than the legal rate for money? Concededly, it was to force payment. It was not the rate collected upon unpaid judgments. It was the rate fixed by law to force the payment of taxes. Immediately the city advertised notice of the lien upon this property. It started the procedure outlined by the charter for the collection of this tax. The mortgagee, under a mortgage for $1,600,000, demanded the payment of the assessment and the satisfaction of this lien, or else it would elect to declare the whole principal sum due. The plaintiff, under this pressure of the lien binding its property, carrying a penalty of 7 per cent interest, paid the assessment under protest,

and has brought this action. What other remedy did it
have? The summary remedy provided in title III of the
charter, sections 958, 959, does not apply to a case like this.
Those sections relate to vacating and modifying assess-
ments for local improvements, section 959 allowing an
application to the Supreme Court " in the proceedings
relative to any assessment or assessments for local
improvements." There were no proceedings pending in
court in which such an application could be made in this
case. An action in equity might have been maintained
to vacate the assessment as a lien upon the land, and
thus remove a cloud upon the title. (*Strusburgh* v.
*Mayor*, 87 N. Y. 452.) Was the plaintiff obliged to resort
to this remedy and was it the only relief? I think not.
We must not shut our eyes to the facts. Litigation, even
on the equity side of the court, is in these modern days
long delayed. Months, if not years, elapse before a case
can be reached for trial. Here was a case where the
validity of the assessment depended upon oral testimony,
the outcome of which might at best be uncertain. In the
meantime, a penalty of 7 per cent was running on the
amount of the assessment. If the plaintiff should lose
on the question of fact, it would be obliged to pay this
penalty, as well as all the other incidental expenses and
penalties which had accrued under the charter in the
meantime. To relieve itself of this uncertainty and this
liability created by an assessment which might possibly
be void when the facts were ultimately established, the
plaintiff paid the assessment and stopped the running of
the penalty. Was this unreasonable or improper within
the authorities? These facts, I think, bring this case
within the reasoning of *Peyser* v. *Mayor*, which I have
quoted above. Coercion is " that duress of person or
goods, where present liberty of person or *immediate*
possession of goods is so needful and desirable, as that
an action or proceedings at law to recover them will not
at all answer the pressing purpose." Time is sometimes

an element to be considered. Mr. Justice FIELD in Radich v. Hutchins (95 U. S. 210, p. 213) wrote:

" To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * · * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of *immediate* relief than by making the payment." (See note to *Mayor · of Baltimore* v. *Lefferman*, 45 Amer. Decisions, p. 145, p. 153.)

We find some intimation that the pressure of a lien under these circumstances may cause a payment to be involuntary. Thus in *Tripler* v. *Mayor* (*supra*) the court considered the lapse of time during which the assessment had remained dormant, without any attempt upon the part of the city to collect it, and said:

" The very word used to describe an involuntary payment, imports a payment made against the will of the person who pays. It implies that there is some fact or circumstance which overcomes the will and imposes a necessity of payment in order to escape further ills. * * *

" But plaintiff now alleges there was coercion in fact because the statute imposed interest on the principal sum of the unpaid assessment, and a payment to prevent the accruing of interest is claimed to be an involuntary one. There is no finding that the payment was made for that purpose, but there is a finding as to why the payment was made, which is at war with this contention. The running of interest had no terrors for the plaintiff."

The reason the court said this was because the plaintiff had allowed the assessment to remain for six years or more. Here in this case the plaintiff paid the assessment to free itself, to escape the illegal penalty.

In Cooley on Taxation (vol. 3 [4th ed.], sec. 1283) we read the conclusions of that jurist after a review of the

cases: " A party ought not to be exposed to any more risks of loss in relieving his lands of an apparent cloud upon title than in protecting his goods against an illegal sale."

And Mr. Justice HOLMES, feeling that the doctrine of voluntary payment is sometimes pushed too far, said in *Atchison, etc., Ry. Co.* v. *O'Connor* (223 U. S. 280): " It is reasonable that a man who denies the legality of a tax should have a clear and certain remedy. The rule being established that apart from special circumstances he cannot interfere by injunction with the State's collection of its revenues, an action at law to recover back what he has paid is the alternative left. Of course we are speaking of those cases where the State is not put to an action if the citizen refuses to pay. In these latter he can interpose his objections by way of defence, but when, as is common, the State has a more summary remedy, such as distress, and the party indicates by protest that he is yielding to what he cannot prevent, courts sometimes perhaps have been a little too slow to recognize the implied duress under which payment is made. * * * In this case the law, besides giving an action of debt to the State, provides that every corporation that fails to pay the tax shall forfeit its right to do business within the State until the tax is paid, and also shall pay a penalty of ten per cent. for every six months or fractional part of six months of default after May 1 of each year. * * * In any event the penalty would go on accruing during all the time that might be spent before the validity of the defence could be adjudged." (See, also, *Robertson* v. *Frank Brothers Co.*, 132 U. S. 17.) Connecticut has advanced this opinion:

" A payment of a tax made to avoid the onerous penalties of the Act imposing the tax for its nonpayment, is not a voluntary payment. *The more modern doctrine supports this view.*" (WHEELER, J., in *Underwood Typewriter Co.* v. *Chamberlain*, 92 Conn. 199, p. 205.) Continuing the court says:

" The Company was confronted with this situation: Though it contested the validity of the tax successfully it could not prevent the filing of the lien upon its property. And if it were unsuccessful, no matter what merit its claims possessed, the lien would attach, and the five per centum penalty and the nine per centum interest would accrue. The lien might prove a serious burden upon its credit, while the actual pecuniary losses, suffered or threatened, involved a hardship and loss which no company should be compelled to face. It could not measure the extent of these penalties, because it could not know the time the tax litigation would take. It would be unfair to it to compel it to take this risk of loss as the condition of its right to test the validity of the tax. It should have that right without condition, and by a clear and certain remedy."

This court had something to say on the subject in *Ætna Ins. Co.* v. *Mayor* (153 N. Y. 331). This involved a tax upon bank stocks owned by a fire and marine insurance company. The tax was paid and the action brought to recover back the money. This court held that the payment of the tax was involuntary, as the law made the tax a lien upon the shares of the bank, and that all transfers of the shares were subject to the lien. The opinion was as follows:

" That being the effect of the imposition of the tax, we think it amounted to such an impounding or duress of the plaintiff's property as to render the payment so far involuntary as to authorize an action for the recovery of the money thus wrongfully received by the defendant. The plaintiff could only establish its right to a full enjoyment of its property by proof of the facts which entitled it to an exemption under the statute of 1886, in an action or proceeding instituted for that purpose, or by payment of the tax. The defendant having, by its unauthorized act, placed the plaintiff in that position, it cannot relieve itself from a liability to refund the amount it thus wrong-

fully received by asserting that the payment was a voluntary one, or by claiming that the plaintiff might have pursued some other remedy to relieve its property from the lien thus established. The payment was necessary to relieve the plaintiff's property from the lien to which it was made subject by the wrongful acts of the defendant's officers, unless it instituted a proceeding to establish the invalidity of the tax. The plaintiff, to enforce its rights, elected to pay the tax and thus relieve its property from such lien, and then to institute an action to recover the amount it was obliged to pay, instead of commencing a proceeding to set aside the tax. We think the defendant is not in a position to complain because the plaintiff elected to pursue the former instead of the latter remedy, and that the payment cannot be held to be so far voluntary as to deprive the plaintiff of its right to recover the amount of taxes thus wrongfully levied and received by the defendant."

This was followed up by *People ex rel. Wessell, Nickel & Gross* v. *Craig* (236 N. Y. 100) which dealt with the powers of the Board of Taxes and Assessments under section 897 of the charter to modify erroneous assessments. The city claimed that no power existed after a tax based upon the assessment had been paid. In the course of the opinion, this court said: " The tax becomes a lien at the times stated in the charter (Sec. 914). Payment made thereafter is not voluntary, for the menace of the lien with penalties added for delay (Charter, secs. 916, 1020) has the effect of rendering it compulsory." (See, also, *People ex rel. Amer. Exchange Nat. Bank* v. *Purdy*, 196 N. Y. 270, 277.)

It is difficult for me to see any distinction in principle between the lien upon the bank stock and the lien upon the real estate. The inability to transfer bank stock subject to a lien was no more oppressive than the lien of the assessment with its accumulating penalties and expenses. The circumstances of these various cases may

be different, but the hardship to the one illegally assessed is a reality, not a myth. (To the same effect are *Western Union Tel. Co.* v. *Mayer*, 28 Ohio St. 521, and *Dexter* v. *Boston*, 176 Mass. 247, p. 252.)

Under the circumstances of this case, therefore, the payment by the plaintiff of the assessment was not only involuntary, as a fact, but was also involuntary within the reason and the rule of the later authorities.

One case only do I find in this State which seems to hold a contrary opinion, and that is *Haven* v. *Mayor* (67 App. Div. 90; affd., 173 N. Y. 611, without opinion). Affirmance by this court without opinion does not mean that we have adopted the opinion of the court below in its entirety. The Appellate Division in that case not only held that the payment by the plaintiff was voluntary, but it also found that the assessment was not illegal. One judge concurred in the result. This court may very well have affirmed upon the latter reason.

*Bruecher* v. *Village of Port Chester* (101 N. Y. 240); *Jex* v. *Mayor* (103 N. Y. 536); *Phelps* v. *Mayor* (112 N. Y. 216); *Bowns* v. *May* (120 N. Y. 357); *Vanderbeck* v. *City of Rochester* (122 N. Y. 285); *Scudder* v. *Mayor* (146 N. Y. 245); *Poth* v. *Mayor* (151 N. Y. 16), state the general rule of voluntary payments in tax cases, but are not in conflict on the facts with the result we have reached in this case. We do not mean to say that a payment made without protest and under no immediate pressure to escape a penalty can be recovered if later it is ascertained that the assessment was illegal. We are dealing with the facts of this case.

Our conclusion, therefore, is that if the repaving of Thirty-fifth street was caused by the act or neglect of the city, and not by the act of the plaintiff or for the benefit of its property within the meaning of section 391, the assessment was illegal and void. This is a question of fact which must be tried out. The trial judge was wrong in concluding on the plaintiff's evidence that the assess-

ment was valid. We also hold that if the assessment was void by reason of facts dehors the record, the payment made by the plaintiff to relieve the land of the lien of the assessment and the burden of the penalties was not a voluntary payment and it may be recovered back.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., ANDREWS, LEHMAN and KELLOGG, JJ., concur; POUND, J., dissents; O'BRIEN, J., not sitting.

Judgments reversed, etc.