St. Stanislaus Church Society, Plaintiff, *v.* County of Erie and Others, Defendants.

Supreme Court, Erie County, July 12, 1934.

*Ansley B. Borkowski* [*Ansley B. Borkowski* and *Charles Leo O'Connor* of counsel], for the plaintiff.

*Layton H. Vogel* [*Maurice J. Rumizen* of counsel], for the defendant County of Erie.

*George B. Doyle,* for the defendants Town of Cheektowaga and the Board of Assessors of the Town of Cheektowaga.

Harris, J. By this action the plaintiff seeks to have this court declare that certain cemetery lands owned by the plaintiff are not subject to general taxation and/or to assessments for local improvements, and to direct the cancellation of certain taxes now regarded as liens upon such cemetery lands, to enjoin the defendants from further assessing such lands for taxes, local or general, and to recover back moneys already paid for assessments for certain local improvements consisting of sewers.

The plaintiff is an association incorporated exclusively for religious purposes and ministers to the spiritual needs of a parish containing upwards of 10,000 Roman Catholics, practically all of whom are of Polish birth or descent. The congregation is a pioneer one among those congregations serving Poles in this country.

Nearly fifty years ago, and under the authority of the Religious Corporations Law, the plaintiff applied for and acquired for cemetery purposes land on the east side of Pine Ridge road in the town of Cheektowaga, Erie county. At that time the lands along that portion of Pine Ridge road in such town and on either side of such road were largely used for cemetery purposes by religious organizations of many denominations. Since the creation of such cemetery by the plaintiff, the lands along both sides of Pine Ridge road have more and more become used as cemetery lands. With the development of the plaintiff's congregation came the establishment of sister congregations throughout Western New York devoted to the religious service of Poles adhering to the Roman Catholic faith. Such congregations in Western New York now have under their charge close to 200,000 communicants.

As has been said, the plaintiff was early in the field of religious work in Western New York, and as the other Polish Roman Catholic congregations developed in that vicinity all of such congregations except one (St. Adelbert's) buried their dead in the cemetery of the plaintiff. As the population grew and deaths became more numerous, the plaintiff found it necessary to extend its cemetery lands. First it acquired lands adjoining its original lands on the east side of Pine Ridge road; later and in more recent years the plaintiff purchased lands on the west side of Pine Ridge road. The original plot east of Pine Ridge road consisted of twenty acres purchased in 1890. To this was added an adjoining five and one-half acres in 1907. In 1912 there was a purchase made of almost fifteen acres on the west side of the road and in 1920 there was a purchase of about the same amount on the west side and adjoining the land purchased in 1912. The final purchase was of lands contiguous to those already held on the west side of the road and was made in the year 1929.

Some question has been raised by the defendants that the purchases of land on the west side of Pine Ridge road were not necessary to the purposes of the plaintiff, but considering that at the time such purchases were made there remained only scattered graves in the land on the east side of the road and considering that Pine Ridge road in this section of the town has been used almost exclusively for cemetery purposes, and bearing in mind further the rapid growth of the population in Western New York and the development of the Polish Roman Catholic churches in that territory, this court is of the opinion that all of the purchases made by the plaintiff and all of the lands held by the plaintiff on both sides of Pine Ridge road are necessary for its cemetery purposes.

Some question was raised that in order to be free from taxation the plaintiff should have burials made in the various plots as they were purchased, and following this thought the plaintiff did make individual burials in practically each one of these later purchased plots.

A certain portion of the lands held by the plaintiff on Pine Ridge road is permitted to be the burial place of non-Catholics, but this seems only natural because no matter what the faith, certain persons within the church may have loved ones whom they desire buried in their vicinity, although such loved ones are not communicants of the church and, therefore, not entitled to be buried in consecrated ground. The portion set aside for the purpose of the burial of non-Catholics is small in size.

There is no reason to question the good faith of the plaintiff in purchasing all of this property on each side of the road, and in fact the court is of the opinion that such purchase of additional pieces of property from time to time showed good judgment on the part of the authorities of the church in looking forward to the care of the communicants of their faith and racial descent.

Due to the use of the properties by the plaintiff and the proposed and apparently early future use of those portions that are not yet occupied by graves, all of the parcels of the plaintiff are entitled to be considered as cemetery lands and, therefore, not subject to any general taxation or the payment of assessments for any local improvements. (Real Prop. Law, § 450; Tax Law, § 4, subd. 7; Relig. Corp. Law, § 7; *Matter of City of New York*, 192 N. Y. 459, and cases therein cited; *Buffalo Cemetery Assn.* v. *City of Buffalo*, 118 id. 61; *People ex rel. Buffalo B. P. Assn.* v. *Stilwell*, 190 id. 284; *Matter of Trustees of Ref. Prot. Dutch Church*, 100 Misc. 143.)

On April 22, 1927, the town board of Cheektowaga, on petition of certain taxpayers and pursuant to statute, created Sanitary Sewer District No. 5 in the said town, which district embraces the cemetery lands owned by the plaintiff. The plaintiff did not sign the petition and did not appear at the hearing appointed to be held to receive opposition to the creation of the said sanitary sewer district. Contracts were let, the sanitary sewer was erected and bonds were issued to defray its expense. Installments for such expense were levied against all the real property in the district including the property described in the complaint and hereinbefore referred to as the cemetery lands of the plaintiff.

The town board of Cheektowaga established a storm sewer district known as No. 2, which district covered the territory which included the cemetery lands of the plaintiff. The plaintiff neither petitioned for the establishment of such storm sewer nor did the

plaintiff oppose such establishment. Bonds were issued to cover the cost of such storm sewer and later, to meet part of the value of such bonds and the carrying charges thereof, assessments were laid against the real property in the district, including that of the plaintiff. When the plaintiff made its most recent purchases of cemetery lands on the west side of Pine Ridge road some of the parcels already had thereon the burden of the amount of general taxes for the current year. The plaintiff claims that at various times it made protest to officials of the town and of the county against such taxes and assessments.

A careful study of the testimony shows that all that really occurred were some desultory conversations between individuals, which cannot be regarded as protests, and the filing of petitions by the plaintiff from time to time asking for relief from general taxation and for a reduction in the penalties for delayed payment of the assessments for the sanitary and storm sewers. The claim made by the plaintiff in its petition for relief from general taxation was based upon the fact that when the sanitary sewer was established, it was agreed between the plaintiff and the town of Cheektowaga that the plaintiff's land should be free of general taxation, although in view of the clarity of the law on this subject, it is difficult to understand why the plaintiff should have felt itself benefited by such an agreement when the law itself made the plaintiff free so far as the cemetery lands were concerned, of all taxation and assessment. (See cases cited above.)

However, in reply to these various petitions, the board of supervisors did cancel certain general taxes but refused to compromise the local assessments. From time to time and following such petitions, the plaintiff paid the levies made for sanitary and storm sewers until it paid between $10,000 and $11,000, which the county received on behalf of the town and paid over to the town. Evidently such payments were made by the plaintiff with full knowledge of the facts and were not made under duress or coercion of any sort. Originally the plaintiff was not liable for such assessments but having paid the same voluntarily, the plaintiff may not now ask for relief from such payment and the return of such moneys. (*Adrico Realty Corp.* v. *City of New York*, 250 N. Y. 29; *Matter of Village of Delhi*, 201 id. 408; *Redmond* v. *City of New York*, 125 id. 632; *Tripler* v. *City of New York*, Id. 617; *Girls' Friendly Society of New York, Inc.*, v. *City of New York*, 144 Misc. 839.)

This court is of the opinion that the plaintiff is entitled to the relief of a judgment to the effect that the cemetery lands above mentioned and owned by the plaintiff in the town of Cheektowaga

are not in any way subject to general taxation or to assessment for any local improvements, including the future amounts to become leviable for the sanitary and storm sewers above referred to, and directing the cancellation of all taxes and assessments now held as liens on such cemetery properties, and to restrain the town and county authorities from further assessing the said cemetery lands for general taxes or local assessments, but that said plaintiff is not entitled to recover back any taxes or assessments already paid and which are the subject of this suit.