## E. R. SQUIBB & SONS v. CHEMICAL FOUNDATION, Inc.

### No. 76.

Circuit Court of Appeals, Second Circuit.

Dec. 20, 1937.

Seward Davis, of New York City (Joseph H. Choate, Jr., and Paul Kolisch, both of New York City, of counsel), for appellant.

Cravath, De Gersdorff, Swaine & Wood, of New York City (Wm. D. Whitney, Bruce Bromley, and Albert R. Connelly, all of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

This is an action to recover royalties paid by the plaintiff under patent licenses after the patents had expired. It was brought in a state court and removed to the District Court on the ground of diverse citizenship. A jury being waived, trial was had to the court upon stipulated facts. From a judgment for the plaintiff, the defendant has appealed. The appeal raises primarily questions of construction of the agreements by which the defendant licensed the plaintiff to manufacture, use and sell three patented chemical products of medicinal value, known as arsphenamine, neoarsphenamine, and sulfarsphenamine.

The arsphenamine license, dated June 16, 1919, was one of four licenses issued contemporaneously; the other three being ancillary to the first and concerning respectively the "ingredient" or arsphenamine-base patent, the "ampul" patent, covering a sealed ampul for packaging arsphenamine, and the "administering" patent, covering a solution for hypodermic injections of arsphena-

mine. Each of these four licensing agreements provided that the aggregate royalty to be paid by the licensee under all four should be 5 per cent. of the gross sums received by the licensee from the sale of the product arsphenamine. The patent for this product had the latest expiration of any of the patents, namely, November 10, 1931. Each of the four licenses ran "for the term of the patent." For convenience the four licenses will be referred to as the group licenses.

The neoarsphenamine license was a separate agreement, also dated June 16, 1919, and will be referred to as the second license. It ran for the term of the patent and provided for a royalty to be paid "during the continuance of this license" of 5 per cent. of the licensee's gross sales of neoarsphenamine. The patent for neoarsphenamine was a reissued patent. The only date disclosed by the license agreement was the date of reissue, namely, December 15, 1914. It expired February 18, 1930. Royalties paid by the plaintiff on sales of neoarsphenamine between the expiration of the patent and June 30, 1931, were $15,452.19. The first count of the complaint sought recovery of these payments, with interest, as made under mistake of fact.

. The third license, dated April 27, 1923, covered the sulfarsphenamine patent. It provided a royalty of 5 per cent. on gross sales of the licensed product. The patent expired April 30, 1929. The plaintiff paid royalties for a period ending June 30, 1931, on sales of sulfarsphenamine made subsequent to expiration of the patent. The second count of the complaint sought recovery of such royalties in the amount of $8,344.04, with interest.

■■ Although separate in execution and delivery, the defendant contends that the group licenses, the second license and the third license should be read as constituting a single contract and obligating the plaintiff to pay royalties on sales of neoarsphenamine and sulfarsphenamine until the expiration of the arsphenamine patent, that is, until November 10, 1931. There is no language in the third license on which to base this contention except the words "licensed patents." A printed form was used in the execution of this license. The employment of the words "licensed patents" is without significance since the printed form defines these words as referring to the patents enumerated in Schedule A, and the schedule lists only the one patent for sulfarsphenamine. The argument with respect to the second license is on somewhat firmer ground, since the neoarsphenamine license does contain references to the group licenses. But the references are not such as to lead to the conclusion asserted. The second paragraph recites merely that "this license is one of five, four of which * * have heretofore been issued," and that the purpose of "this license" is to permit the licensee to make, use and sell neoarsphenamine, and to use in connection therewith, "under the licenses already issued" the packing ampul and the administering solution. The third paragraph provides that the royalty of 5 per cent. on the licensee's gross sales of neoarsphenamine shall be paid "during the continuance of this license" at the time and in the manner as provided in the arsphenamine license. The latter provided for payment within 30 days after January 1st and July 1st in each year. The fourth paragraph states that all the provisions and conditions of the group licenses are binding upon "the licensee herein" and "shall have the same force and effect as if bodily incorporated herein." The purpose of this clause was plainly to incorporate by reference the provisions relating to the keeping of books, the furnishing of information, the cancellation of the license, and similar matters which were embodied in the arsphenamine license but not in the neoarsphenamine license. These were relatively minor matters which might appropriately be incorporated in a later license by reference to a prior one; but with respect to the essential matters of duration and royalty the neoarsphenamine license contained its own provisions complete in themselves. We can see no justifiable reason for reading the incorporation clause as overriding the express provision that the royalty shall be paid "during the continuance of this license," which was granted "for the term of the patent unless sooner terminated."

■ There is a presumption that royalties are not to be paid after the expiration of a patent; if the intention is to have them continue longer, the parties should phrase their contract in language from which such intention may fairly be inferred. Sproull v. Pratt & Whitney Co., 2 Cir., 108 F. 963; Pressed Steel Car Co. v. Union Pac. R. Co., 2 Cir., 270 F. 518.

The defendant argues that we should adopt its contention that the plaintiff was bound to pay the royalties in suit because the plaintiff used one or more of the patents of the group licenses in making, using

478

and selling neoarsphenamine and sulfarsphenamine. The stipulation of facts denies this unequivocally with respect to "the products or processes covered by patent No. 1,116,398." This disposes of the argument in so far as it relates to use of the arsphenamine patent. Since the "ingredient" or arsphenamine-base patent expired first of all, March 7, 1928, it cannot extend the plaintiff's duty to pay royalties under patents which expired later. The ampul patent and the "administering" or solution patent expired December 16, 1930, and it is urged that since one or both of these patents were used in marketing neoarsphenamine and sulfarsphenamine, it must be inferred that the plaintiff was intended to pay royalties at least until that date, for otherwise it would be an infringer.

 The licenses covering, respectively, the ampul patent and the "administering" patent were not expressly limited to using these patents with arsphenamine. From the second paragraph of the neoarsphenamine license it is clear that the plaintiff could also use them in marketing that product, and no royalty was required for such use. It would make over the license to extend the royalty on sales of neoarsphenamine after expiration of the neoarsphenamine patent because the processes or products of one or the other of these ancillary patents was used in marketing it. The sulfarsphenamine license is silent on the subject of using the processes or product of the ancillary patents. Hence, the plaintiff was either a licensee for nothing, or an infringer, if it used the ampul or the administering patent in marketing neoarsphenamine or sulfarsphenamine after expiration of those patents. But whichever it was, we can see no warrant whatever for saying that it must pay 5 per cent. of the gross sales of neoarsphenamine and sulfarsphenamine until the ampul or administering patent expired. There is no ambiguity in the provisions that the royalty was to be paid to the end of the term of the licensed patent, unless the license be sooner terminated. · Accordingly, we agree with the District Court's conclusion that the defendant was not entitled to receive any of the royalties in dispute.

 The next question is whether the plaintiff may recover them as paid under a mistake of fact. It is argued that the mistake was one of law rather than fact. The date of expiration of the sulfarsphenamine patent was plainly a question of fact only. With respect to these royalties the stipulation states: "Said sums were voluntarily paid by plaintiff without actual notice that patent No. 1,024,993 had expired, and in the belief that said patent had not yet expired on the date that each respective payment was made." The neoarsphenamine patent was a reissue, and, had it appeared that the plaintiff knew the date of the original patent as well as the date of the reissue and supposed that the reissue ran for 17 years from its date rather than from the date of the original, that might be considered a mistake of law. But it does not appear that the plaintiff knew the dates and mistook the statute which determines the duration of a reissue. The language of the stipulation respecting the neoarsphenamine royalties is the same as that already quoted regarding sulfarsphenamine royalties. Even if the date of expiration of a patent be deemed a conclusion drawn from both law and facts, it is not the kind of mistake of law which permits a person to retain money to which he was not entitled. Stanley Rule & Level Co. v. Bailey, 45 Conn. 464; Lawrence v. American Nat. Bank, 54 N.Y. 432; Adrico Realty Corp. v. New York, 250 N.Y. 29, 37, 38, 164 N.E. 732, 64 A.L.R. 1.

 The final contention is that the defendant has changed its position by expending the royalties in dispute, so that it is inequitable to require it to return them. In expending the royalties the defendant acted under no mistake of fact. The stipulation states that the defendant knew that the neoarsphenamine and sulfarsphenamine patents had expired, and that it received and retained the royalties in good faith in reliance upon its interpretation of the license agreements. The defendant's argument rests on the fact that it is a charitable corporation and spent the royalties for the advancement of chemical and medical science. We cannot see that this presents a defense to the plaintiff's just claim. Charitable corporations no less than individuals should be just before they are generous. The payment of this judgment may cause the postponement of some contemplated benefaction for scientific research; but the defendant has already advanced with the royalties in dispute some project which should have been postponed until it had paid its debt to the plaintiff. There has been no such change of position on the part of the defendant as should defeat the plaintiff's claim, assuming (without decision) that such a defense might prevail under other circumstances. See Warren, Problems in

Probate and Administration, 32 Harv.L.Rev. 315, 346.

Judgment affirmed.