Frank A. Gulotta, J.
This is an action for a mandatory injunction to compel defendant to execute, in writing, its approval of certain plans for the construction of a one-family house submitted by plaintiffs, and for damages flowing from the alleged arbitrary refusal to so do.
Concededly, the plans met all necessary requirements and complied with the building code and in fact the village issued a building permit, but defendant refused to approve the plans upon the sole ground that plaintiffs were indebted to it in the sum of $1,600.78 for a water main assessment and has counterclaimed against plaintiffs in that amount.
On October 1, 1957 plaintiffs purchased a parcel of land on Meudon Drive in a section of the Village of Lattingtown known as Lattingtown Harbor. The deed recited that the conveyance was subject to covenants, restrictions and easements of record. One of the instruments affecting this property was a certain “ Amended Declaration ” dated October 23, 1951, and recorded in the Nassau County Clerk’s office on May 19, 1952 in Liber 4871 of Deeds (p. 403).
Paragraph 3 of the Amended Declaration provides that no structure shall be constructed nor any alteration made unless and until the plans and specifications shall have been approved by defendant in writing. Paragraph 10 gives defendant the right to install permanent water lines and continues “ it shall then be the obligation of each property owner to contribute to the cost of said water lines on a basis calculated by multiplying the cost of the water lines per foot, by the number of frontage feet owned”. Paragraph 11 provides that all such charges shall run with the land and be binding upon all present and subsequent owners of the land affected.
*340 The court finds that as a matter of law plaintiffs were bound by the terms of the Amended Declaration and the land which they purchased was subject to those provisions at the time of purchase.
As to the genesis of the water main charges, it appears that, in or about December, 1955, defendant and certain property owners instituted a plan for the installation of water mains and pursuant thereto such mains were installed. Prior to their installation and more particularly on April 10, 1956, the then owners of plaintiffs’ parcel of land, Nicholas and Martha De Trano, were notified in writing that their portion of the obligation, based upon front footage, would amount to $1,706.53. At a meeting following said notice the De Tranos protested the assessment contending that there was in existence an agreement between defendant and De Tranos’ predecessors in title, Harold and Marie Payton, obligating defendant to install water mains in front of their property at its own cost and expense.
It appears now that this is in fact true and plaintiffs offered in evidence a contract dated November 25,1953, between defendant and the Paytons providing for the purchase by the Paytons from defendant of the land now owned by plaintiffs. That contract provides as follows: “ the parties agree that the purchase price herein includes water mains in Meudon Drive at or near the property line, so as to make water available in front of the premises herein contracted to be sold. The said water main shall be installed by the seller at its own cost and expense, within a reasonable time on one month’s written notice, weather permitting. This paragraph shall survive delivery of the deed ’ ’. Defendant contends that by this clause it was intended that defendant’s responsibility was to run the water mains up to the point where plaintiffs’ property began. Any reasonable person reading that clause could not, however, come to that conclusion. Water was to be made available in front of the premises so that the property owner could tap in. This seems to be the clear intendment of that provision and undoubtedly was exacted by the purchasers to safeguard themselves against the very assessment defendant now seeks to impose.
The court, therefore, finds that it was defendant’s obligation to install water mains in front of the plaintiffs’ property. This obligation survived the contract by its terms and by privity of estate plaintiffs became entitled to its benefits.
The court will therefore grant judgment to plaintiffs to the extent that it orders defendant to approve in writing the plans and specifications submitted to it. However, the court feels that plaintiffs are not entitled to any extensive damages because of *341 defendant’s refusal to give written approval. In the first place plaintiffs went ahead with the construction without such approval and the structure is now practically completed. They claim, however, that because of this alleged illegal assessment which, after adjustments, amounted to $1,600.78, they were refused a mortgage after having obtained a commitment for $25,000, that to finance the construction of the house plaintiffs had to borrow some $5,000 from a bank and were compelled to sell a house at a distress price of $50,000 which they valued at $65,000.
However, these consequences, even if we assume that they actually ensued as a result of defendant’s wrongful refusal to approve the plans, could have been easily avoided simply by paying the $1,600 under protest and then suing to recover same, in which case the damages would only have been the interest on that sum for a few months. The defendant, in fact, agreed to accept payment under those conditions.
Economic duress or business compulsion, whereby a person pays a sum of money to release his property from some unlawful exaction in order to avoid a greater detriment, renders the payment nonvoluntary and thereafter recoverable in a separate action. (Adrico Realty Corp. v. City of New York, 250 N. Y. 29, 33; Harmony v. Bingham, 12 N. Y. 99; Berg v. Hoffman, 275 N. Y. 132; 79 A. L. R. 655.)
While a party is not under a duty to minimize damages by complying with a clearly unjust demand, where the demand is made in good faith, although erroneously because of factors not known to the parties at the time, or at least not in the forefront of their consciousness, then the claimant is under a general duty to minimize his damages. (Brown v. Weir, 95 App. Div. 78; 1 Clark, New York Law of Damages, § 110.)
At the time demand was made for plan approval on January 12, 1959, plaintiffs’ position was that they were not bound to pay the water main charges, because they had not known of them specifically at the time they took title. They were in error in this stand, because they were bound by the recorded restrictions and under a duty to inquire as to the extent of any past-due charges under them.
The clause in the Payton deed was not adverted to in any way and it is doubtful if plaintiffs learned of it, or appreciated its significance, until some time later when preparation was being made for this trial.
Plaintiffs are, therefore, awarded damages of $32 to the time of the jndgment to be entered herein.
*342 Nothing has been shown to warrant a declaratory judgment to the effect that paragraph 3 of the Amended Declaration is void and unenforcible, and accordingly the plaintiffs’ second cause of action is dismissed.
Defendant’s counterclaim is dismissed.
The within constitutes the findings of the court under section 440 of the Civil Practice Act.
Motions on which decision was reversed, are disposed of in accordance with this opinion.
Settle judgment on notice.
Neither party is allowed costs.