[Civ. No. 21908.   First Dist., Div. Three.   May 14, 1965.]

WILLIAM A. FINNEGAN, as Executor, etc., Plaintiff, Cross-defendant and Appellant, v. SPIEGL FARMS, INC., Defendant, Cross-complainant and Appellant.

George L. Duke and George F. Wasson, Jr., for Plaintiff, Cross-defendant and Appellant.

Ackerman, Johnston, Johnston & Mathews and Willard S. Johnston for Defendant, Cross-complainant and Appellant.

DRAPER, P. J.—Plaintiff sought recovery of royalties under patent licensing agreements. Defendant cross-complained to recover royalties paid. Both appeal from the judgment. The principal issue is the duration of the agreements.

In 1945, plaintiff agreed to install, and defendant to pay him for, a unit for commercial freezing of food. The agreed price was fully paid. This agreement expressly provided that it granted no license to use the equipment. By "license agreement" executed at the same time as that for installation, defendant agreed to pay royalties for the use of the unit. This agreement described five patents held by plaintiff, plus an application for another patent, as the "Finnegan Patents." It permitted defendant to use the machine sold to it, referred to as "a unit described in the Finnegan Patents," and to "employ by means of such unit only the applicable method for rapid freezing . . . embodied in the Finnegan Patents." It also provided that "Licensee may maintain said unit, but shall not alter or make any addition thereto without Licensor's written consent." The term of the agreement was specified to be "for and during the life of the Finnegan Patents." Within a year, four more like units were installed, each under a like installation and licensing agreement.

The five patents described in each license agreement all had expired by April 1, 1958. The main issue turns upon

the application for patent described in the agreements. The trial court found, upon substantial evidence, that this application was rejected by the patent office on the ground of prior art, which was found in the earlier Finnegan patents, and that thereafter plaintiff substituted for the claims in the application wholly new claims, which were not embodied in the units used by defendant. Patent issued in 1947 upon these substituted claims. If this patent fixes duration of the license agreements, they continue to 1964. The trial court found that the agreement ended April 1, 1958, upon expiration of the last of the five patents actually issued when the agreement was signed.

The issue seems settled by a recent decision of the United States Supreme Court (*Brulotte* v. *Thys Co.*, 379 U.S. 29 [85 S.Ct. 176, 13 L.Ed.2d 99]). There, as here, the license agreement referred to a number of patents, only some of which were incorporated in the machine sold to the licensee. The court held that the license terminated upon the expiration of the patents so incorporated. It pointed out that an inventor's right is exclusive only for the period of his patent, and that the right to use, as well as the right to make and sell, becomes public property upon expiration of the 17-year period. It holds that "after expiration of the last of the patents incorporated in the machines 'the grant of patent monopoly was spent' and that an attempt to project it into another term by continuation of the licensing agreement is unenforceable."

We cannot distinguish that case from the one before us. Here, as in *Brulotte,* the machines had been fully paid for by the licensee, and the royalties charged after expiration of the patents embodied therein were precisely the same as those paid before it. It is true that the *Brulotte* agreement did require a minimum annual royalty, while the agreement here does not. But this seems no basis for distinction.

Under *Brulotte,* it is material to determine whether the machines used in fact embody features of a surviving patent. It follows that plaintiff's objections to evidence concerning the scope of the patent issued upon the later application, and negating embodiment of its features in the machines used by defendant, were properly overruled.

Plaintiff asserts error in the trial court's computation of royalties earned before April 1, 1958. The basic licensing agreements require payment of royalty of one mill for each pound of food frozen loose, and one-half mill per pound of

packaged food frozen. In December 1945, the parties negotiated for modification. Plaintiff drew a short "addendum" which provided only that no royalties beyond $17,500 per year would be paid. But he forwarded it to defendant with a letter stating that royalty would be one mill per pound for the first 10,000,000 pounds, one-half mill on each of the next 10,000,000 pounds, and one-fourth mill for the next 10,000,000 pounds, with no charge in any year in excess of $17,500. Defendant signed the addendum, but wrote plaintiff that his letter failed to reflect the provision of the basic royalty agreement for a lesser royalty for packaged foods. Plaintiff's reply stated that this item had "no bearing" on reduction in royalties, but also explained that "[w]hen you have paid $10,000.00 in a part of any one calendar year, thereafter, during the same calendar year the royalty will be reduced 50% on both packaged and loose frozen foods. The following reduction . . . will occur in the same way." For each of the ensuing 13 years, defendant paid royalties computed at one mill and one-half mill per pound, halving each when total payments for the year reached $10,000 and halving again when $15,000 had been paid. There is evidence that defendant made monthly reports and payments during this entire period. In all but two of those years, reductions were taken after payment of the first $10,000 and the next $5,000. Not only were these payments accepted by plaintiff without any dispute as to the accompanying clear statements, but in two years overpayments were made, claimed and explained, and credit therefor taken against later payments with plaintiff's consent. The trial court found that these payments were as required by the agreements, and that no royalties remain due.

Royalties on this basis did not amount to $17,500 in any year. Plaintiff now contends that the amended agreement did not permit reduction of royalties, but merely fixed an annual maximum payment. On the face of the addendum, this contention is sound. But if the correspondence accompanying it be looked to, as the testimony warrants, there is ambiguity. Plaintiff, by an alternative argument, implicitly recognizes the ambiguity, for he contends that the halving of the royalty is to be based upon a charge of one mill per pound for all food frozen, whether loose or packaged. This argument recognizes application of plaintiff's first letter, thus importing ambiguity because of the conflict between the addendum and that letter. It completely ignores plaintiff's second letter, which specifically provides for reduction of 50 per cent "on

both packaged and loose frozen foods.'' Plaintiff, understandably, has not attempted to point out why one of these letters can be part of the agreement and the other not. The addendum and the several letters must be read together, and thus read, their ambiguity is apparent.

The evidence amply warrants resolution of this ambiguity in favor of defendant. ▆ Moreover, this claim was not asserted until supplemental complaint was filed June 2, 1962, more than four years after the last payment claimed. Thus the finding that the statute of limitations had run is supported. The supplemental complaint, apparently recognizing this problem, based the claim upon alleged fraud of defendant in concealing the true amounts due. The finding that no such fraud occurred is supported by the evidence.

Defendant seeks recovery of all sums paid during the life of the licensing agreement. But to impose such a penalty for the attempted extension of the patent monopoly would be to expand grossly the doctrine of the very case (*Brulotte v. Thys Co., supra*) upon which defendant's principal defense of the judgment is based.

The trial court found that defendant had paid, by mistake, $16,594.69 to plaintiff after expiration of the patent April 1, 1958. It found, however, that plaintiff ''innocently received'' this amount, and thus denied defendant recovery upon its cross-complaint. ▆ But mutual mistake is a common ground for restitution, and the ''innocence'' of the payee does not relieve him of liability in quasi contract (see Rest., Restitution, §§ 16, 18, 20; *E. R. Squibb & Sons* v. *Chemical Foundation*, 93 F.2d 475; *Burckard* v. *Smith*, 80 Cal.App. 104 [251 P. 663]).

Judgment on cross-complaint reversed with directions to enter judgment thereon for cross-complainant in the sum of $16,594.49. In all other respects, the judgment is affirmed. Spiegl Farms, Inc. to recover costs on appeal.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied June 9, 1965, and the petition of the plaintiff, cross-defendant and appellant for a hearing by the Supreme Court was denied July 7, 1965.