DORA PINES, Plaintiff, *v.* LIBBIE TRAKTMAN, BENJAMIN TRAKTMAN, CELIA MOLIVER, OSCAR OTTI, if Living, and if They Be Dead, Their Heirs, Devisees, Executors, Administrators, Creditors, Lienors and Grantees, and Their Husbands, Wives or Widows, Heirs, Devisees, Legal Representatives, Creditors, Lienors, Grantees and Successors in Interest, and Their Husbands, Wives or Widows, if Any, All of Whom and Whose Names are Unknown to Plaintiff, THE CITY OF NEW YORK, THE PEOPLE OF THE STATE OF NEW YORK, Defendants.

THE RUDOLPH WALLACH COMPANY, Plaintiff, *v.* LIBBIE TRAKTMAN, BENJAMIN TRAKTMAN, WILLIAM G. MORRISSEY, CELIA MOLIVER, CLARK D. RHINEHART, MONTAUK BREWING Co. (a Domestic Corporation), THE CITY OF NEW YORK, THE PEOPLE OF THE STATE OF NEW YORK, Defendants.*

(Supreme Court, Kings Special Term, January, 1918.)

*Taxes — foreclosure of liens for — defenses of exemption from taxation, and adverse possession — unpaid water rents — Greater New York Charter, § 1047 — dismissal of complaint on merits.*

ACTIONS to foreclose tax liens.

---

* Affirmed by the Appellate Division, Second Department, October 3, 1919, on the opinion below.— [REPR.

Lamar Hardy, corporation counsel (John B. Shanahan and David Rolson, of counsel), for plaintiffs.

J. Charles Zimmerman and James M. Gorman, for the defendant Celia Moliver.

BENEDICT, J. These two cases were by consent of counsel tried together. They are actions for the foreclosure of tax liens on certain premises in the borough of Brooklyn and are defended by the defendant Celia Moliver, who holds the record title under a deed from the Roosevelt Hospital, on the ground that the premises, as the property of the Roosevelt Hospital, were exempt from taxation, and hence the tax liens are void. The corporation counsel has, accordingly, taken over the prosecution of the actions on behalf of the City of New York.

The validity of the tax liens is sought to be supported mainly upon the ground that the premises were sold for taxes in 1887, and that the grantee under the tax deed entered into possession, and that he and his successors in interest have been in actual, open and notorious possession thereof ever since, and hence, at the time of the levy of the taxes which form the basis of the liens under foreclosure, the title of the Roosevelt Hospital had been divested by adverse possession.

The Roosevelt Hospital acquired the title to the premises in question upon its incorporation on or about February 2, 1864, by Laws of 1864, chapter 4, under a deed of trust made by James C. Roosevelt Brown to John M. Knox, dated November 5, 1860, and the will of James H. Roosevelt, probated December 16, 1863. The particular provisions of these instruments it is unnecessary to set out. The Roosevelt Hospital never took actual possession of the premises and never collected any rents therefrom. By a quitclaim deed, dated June 17, 1915, and recorded August 23,

1915, the Roosevelt Hospital conveyed the premises to the defendant Celia Moliver. The taxes for which one of the tax liens was sold are taxes of the years 1900 to 1908, inclusive, and water rents for the years 1899 to 1907, inclusive. The taxes for which the other lien was sold are taxes of the years 1909 to 1912, inclusive, and water rents for the years 1908, 1909 and 1911.

To substantiate the claim of adverse possession the plaintiff proved a chain of title beginning with a tax deed from the registrar of arrears of the city of Brooklyn to Frank J. Munson, dated June 29, 1887, and recorded July 18, 1887. This deed is claimed by defendant Moliver to be void, because of the exemption of the property of the Roosevelt Hospital from taxation, and this proposition is not seriously disputed. It was shown that Munson was in possession and received rents from the premises for some time before his death, which occurred on August 31, 1895, but it does not appear by any clear or convincing evidence how long before his death he took possession. It is impossible to make a finding not based on guesswork that the adverse possession of Munson under his tax deed commenced prior to 1895. I think the evidence would justify me in finding that the premises were held adversely from that time until 1912, or perhaps until August, 1914. Since that time the character of the possession has not been shown, as the person in possession at the time of the trial and for two years before, one Otti or Otte, is not in the chain of title, and is not shown to have been paying rent to anybody who claimed under a deed. In my opinion, therefore, proof of adverse possession falls short of the required twenty years. McMahon's possession was not shown to have been hostile to the record owner, and the first possession under a claim of title was that of Munson, the date of the beginning of which cannot be found

to have been prior to 1895, as already stated. It is well settled that adverse possession must " be shown by clear and cogent evidence." *Cutting* v. *Burns,* 57 App. Div. 185, 187.

The contention that the quitclaim deed from the Roosevelt Hospital to Celia Moliver was champertous is without merit, because the character of the possession, at the date of this deed, June 17, 1915, is not shown.

It is contended by the plaintiff that the defendant Moliver is not in a position to contest the validity of the tax liens sought to be foreclosed, because the exemption of the property of the Roosevelt Hospital from taxation was a privilege personal to that corporation, which it could not transmit or transfer to any grantee. It is true that as soon as the hospital conveyed the property the exemption ceased. But to sustain the plaintiff's proposition would involve holding that the transfer of the property from the hospital to a private owner validated void taxes and void sales thereunder. If the property were exempt from taxation while it belonged to the hospital, any taxes attempted to be levied thereon during the period of such ownership were void, and constituted no lien upon the premises; and the attempted transfers of the alleged tax liens passed nothing to the plaintiffs in these actions which could be made the basis of a suit for foreclosure. Any person interested in the property can, I take it, defend such a foreclosure suit on the ground that the proceedings on which the alleged tax lien was founded are void, and hence that there is no lien to foreclose. The authorities cited on behalf of the plaintiffs on this point are clearly distinguishable from the instant case. They cite, for example, *Mickes* v. *Tousley,* 1 Cow. 114, where a bailee of certain sheep sued a judgment creditor of his bailor and a

deputy sheriff in trespass for taking and carrying away sheep on the ground that they were exempt from execution. It was correctly held that the exemption could be availed of only by the owner of the sheep. They also cite *People ex rel. Jones* v. *Feitner,* 157 N. Y. 363, affg. 32 App. Div. 23, where it was held that prior to chapter 347 of the Laws of 1897 property bought with pension money was not exempt from taxation where the title stood not in the name of the pensioner, but of his wife. And they cite *City of Rochester* v. *Rochester Railway Co.,* 182 N. Y. 99, 118; affd., 205 U. S. 236, where it was held that an exemption from liability to pay for a part of the paving of streets where street railroad tracks were laid was personal to the corporation to which the exemption was granted, and did not pass to its successor. But it is to be noted that in that case the pavement for part of which the defendant was held liable was laid subsequent to the transfer. The other cases cited by the plaintiff on this point have been examined with the like result — that they are all distinguishable from the instant case, because here the contention is that the transfer of the property validated void acts.

There remains the question whether the unpaid water rents constituted a valid lien on the premises in question, so as to give validity to the tax liens to the amount thereof. The Court of Appeals has recently stated the rule to be that a rate or charge for supplying water, not based upon the amount consumed, but determined with reference to the " dimensions, value, exposure, use, etc.," of a building is a tax; but that where the charge depends upon the amount used the transaction is a voluntary purchase. *New York University* v. *American Book Co.,* 197 N. Y. 294, 297. In my opinion, therefore, the second lien is valid to the extent of the water charges for 1911, with interest, and no more. This amount is very small, fifteen dollars and

seventy-four cents; and I am, therefore, of opinion that foreclosure should not be decreed, but that the city should proceed in the manner indicated by section 1047 of the charter, under which the lien of these water rates will continue as a valid lien and may be sold again, if in the meantime they be not paid.

Judgment for the defendants in both actions dismissing the complaints on the merits, without costs.