EFFELL REALTY CORPORATION, Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, Second District, October 8, 1937.

*Irving Segal* [*Alexander E. Rosenthal* of counsel], for the plaintiff.

*Paul Windels, Corporation Counsel* [*Hyman W. Kehl* and *Moses I. Falk* of counsel], for the defendant.

LAZARUS, J.   This is a test case.

The plaintiff is the owner in fee simple of the premises known as Nos. 222–225 Rivington street, in the borough of Manhattan, New York city.

On the 3d and 4th days of February, 1936, there was entered and imposed against said premises charges aggregating seventy-six dollars and fifty cents.   These charges were based on section 21 of article 2 of chapter 25 of the Code of Ordinances of the City of New York, which provides for extra and miscellaneous rates where the water supply is not metered.   The particular subdivision of that section under which the charges were imposed is as follows: " 1. Baths shall be charged $4.50 each per annum, 1 bath supplied to each house free of additional charge."

On March 9, 1936, the plaintiff paid the amount involved, under protest, to the city collector.

This action is for money had and received to recover the amount paid, on the ground that the charges are illegal.

The principal question to be determined is whether the fixtures involved are " baths " within the meaning of the ordinance.

The premises involved are located on the lower east side, and supply the housing needs of the lower, if not lowest, income groups.   Minimum housing standards obtain.   None of the apart-

ments contain a bathroom. The apartments consist of a combination kitchen and dining room, a living room or parlor, and one or more bedrooms. The kitchens are equipped with a sink and washtub. The washtubs rest on legs or stilts about fifteen inches high. Prior to 1923 these washtubs were made of slate with a removable soapstone partition. Although the intention was that they should be used for washing clothes, they were sometimes used as bathtubs. This type of washtub proved to be unsatisfactory and unsanitary. In or about 1923 these washtubs were removed. In their place plaintiff supplied an enamel fixture about fifty-four inches long, twenty-three inches wide, and fifteen inches deep. This fixture also rests on legs or stilts, the same as the old fixture, and occupies precisely the same location in the kitchen. The drain pipe of this fixture connects with the drain pipe of the adjoining sink. While the new fixture does not contain a central partition, it does have an enamel cover. It is common knowledge that covers are a part of the equipment of washtubs and not of bathtubs.

That the primary purpose and use of this fixture is that of a washtub is not seriously disputed. The fact that some of the tenants sometimes make a secondary use of this fixture does not convert the washtubs into bathtubs or " baths " within the meaning of the ordinance. The fact that a passenger car is used occasionally for the purpose of transporting items other than personal baggage does not make it a truck. If any of the apartments would have been equipped with a private bath or bathtub, then, to be consistent, the corporation counsel would be driven to the contention that these apartments are equipped with two baths. The mere statement of such contention exposes its fallacy. Furthermore, I think that the word " baths," as applied to apartments, implies a reasonable amount of privacy. Clearly, this is not to be found in a combination kitchen and dining room. The distinction is not quite as obvious as the difference between a horse chestnut and a chestnut horse, but it is clear enough.

A brief reference to the ordinance confirms the foregoing view.

Subdivision 2 also refers to baths. It fixes the rate for " Baths, in barber shops, public houses and bathing establishments." Surely these baths have no reference to washtubs.

Subdivision 22 is limited to laundries, and fixes the rate for each washtub therein contained.

In short, the authors of this legislation distinguished between washtubs and baths or bathtubs; and, plainly, there was no intention to impose any extra or miscellaneous rate for washtubs in private apartments.

Indeed, prior to 1913 a charge was made for combination washtubs and bathtubs; that is, washtubs with removable central partitions. This provision was eliminated and omitted by amendment of the ordinance on June 10, 1913. (*Subin* v. *City of New York*, 132 Misc. 426.)

Although the fixtures with which the apartments are presently equipped have been in use since about 1923, no previous city administration has sought to impose any extra or miscellaneous water rate for them. The practical construction of a statute by those for whom the law was enacted or by public officers whose duty it is to enforce it, acquiesced in by all for a long time, is of great importance in its interpretation in case of apparent ambiguity. (*Grimmer* v. *Tenement House Department of City of New York*, 204 N. Y. 370.)

Reference is made to definitions to be found in the dictionaries. Courts are not trammeled by such abstract definitions. It is seldom that a word or expression does not yield to more than one meaning. The spirit rather than the letter of the law determines the construction which should be given to it. (*Heller* v. *Pope*, 250 N. Y. 132, 135; *Glennie* v. *Falls Equipment Co.*, 238 App. Div. 7, 11.)

It is only a commonplace that the burden of taxes or charges, such as are here involved, are ultimately passed on to the tenants in the form of rent. In the circumstances, the court will not read into this ordinance that which will create a new right of taxation.

Accordingly, I find that the fixtures involved in this action are not " baths " within the meaning of the ordinance.

As we have seen, the extra or miscellaneous charge was not based upon the quantity of water consumed. Therefore, the rate or charge is a tax. (*Pines* v. *Traktman*, 109 Misc. 680; affd., 189 App. Div. 904.) Having determined that the fixture involved in this case is not a " bath " within the meaning of the ordinance, the tax is without statutory authority, and, hence, is illegal and void.

Notwithstanding the illegality of the tax, it is urged that recovery must be denied because plaintiff's payment was voluntary. The contention is untenable.

Under the provisions of section 476 of the Greater New York Charter (as amd. by New York City Local Laws of 1929, No. 14, p. 99) such charges became due and payable when entered. In default of payment on or before the last day of the month following the month of entry, it becomes the duty of the city collector to charge, collect and receive interest thereon at the rate of seven per centum per annum, to be calculated to the date of payment from the date of entry.

Under the provisions of section 473 of the Greater New York Charter (as amd. by Laws of 1916, chap. 602, § 2), such charges become a lien upon the land and building against which they are imposed.

The plaintiff paid the amount involved to the city collector on March 9, 1936. Payment was made by two checks, each of which bore the legend, " Paid under protest."

Apart from the fact that plaintiff's property was subjected to a lien for the amount of the illegal tax, there was the menace of the accrual of a penalty for delay of seven per cent interest per annum. Obviously, the purpose of the penalty, which is in excess of the legal rate of interest, was to force or coerce payment. This was sufficient to constitute duress. (*Ætna Ins. Co.* v. *Mayor of City of New York*, 153 N. Y. 331.) It is true that the *Ætna* case involved a lien upon bank stock, but there is no distinction in principle between a lien upon bank stock and a lien upon real property. (*Adrico Realty Corp.* v. *City of New York*, 250 N. Y. 29, 43.) The payment was necessary to relieve plaintiff's property from the lien and to prevent the accrual of the penalty. In the circumstances, plaintiff had the right to make the payment, and it ill becomes the defendant's officers, who imposed the illegal tax, to claim that the payment was voluntary. The payment under protest amply indicated that it was conditioned upon plaintiff's reserved right to recover the same by appropriate and orderly action, and the defendant is estopped from asserting that the payment was voluntary. (*Fuller* v. *Kemp*, 138 N. Y. 231, 237.) Finally, whether the payment was made in renunciation of any adverse right boils down to a question of intention. The tax was void and not merely erroneous. The payment under protest clearly indicated plaintiff's purpose to challenge the tax. (*People ex rel. Wessel, Nickel & Gross* v. *Craig*, 236 N. Y. 100, 104, 105.) At least, the payment was not so far voluntary as to deprive the plaintiff of its right to recover the amount illegally exacted. (*Ætna Ins. Co.* v. *Mayor of City of New York*, 153 N. Y. 331, 340.)

It is suggested that plaintiff was aware of all the facts, and plaintiff may not recover money paid under a mistake of law. The general rule has no application to a situation like this. The payment was not purely or simply under a mistake of law. The charge or tax did not upon its face betray any illegality or invalidity. Whether the fixture was a washtub or a bath was a disputed question of fact; and the rule of law was dependent upon the solution of that issue of fact. It is settled that it would be unreasonable to put upon the taxpayer the burden of determining the accuracy of the facts; that it cannot be charged with the knowledge

of these facts which, being disputed, ultimately must be decided by a court. (*Adrico Realty Corp.* v. *City of New York*, 250 N. Y. 29, 37, 38.)

Finally, it is urged that plaintiff has mistaken its remedy in resorting to the action for money had and received. The contention is erroneous. This form of action is of broad scope, and is the outgrowth of the efforts of the courts of law to enforce equitable obligations. It is well settled that money in the hands of one person to which another is equitably entitled, may be recovered in this common-law action by the equitable owner, upon an implied promise arising from the duty of the person in possession to account for and pay over the same to the person beneficially entitled. In other words, whenever one person has in his possession money which he cannot conscientiously retain from another, the latter may recover it in this form of action. (*Roberts* v. *Ely*, 113 N. Y. 128, 131.)

The tax was illegal. It was imposed without statutory authority or jurisdiction. Payment was obtained by the defendant through implied duress. Even so, the plaintiff paid under protest. Clearly, money had and received is the proper remedy. (Cf. *Adrico Realty Corp.* v. *City of New York*, 250 N. Y. 29, 39, 45; *Ætna Insurance Co.* v. *Mayor of City of New York*, 153 id. 331, 339, 340; *Strusburgh* v. *Mayor of City of New York*, 87 id. 452, 456, 457; *International Paper Co.* v. *Burrill*, [D. C.] 260 Fed. 664, 665–667.)

Judgment for the plaintiff.