Edward Goodell, J.
This case involves the determination of the circumstances constituting the beginning and end of the relationship of attorney and client.
The cause of action is for money had and received in the sum of $1,666.66. The relief actually sought by the plaintiff is both an explanation of the purposes for which $20,000 was disbursed by the defendant, an attorney, and for judgment awarding to the plaintiff 1/12 of that amount or $1,666.66.
*802 In addition to the primary substantive question, a procedural question is also involved, namely whether the plaintiff’s cause of action is for money had and received, the theory of the complaint, or whether in fact it is an action in equity for an accounting, in which case it would be beyond the jurisdiction of the Civil Court.
The background that led to the development of these issues is this:
Herman Muehlstein died on July 30, 1962, leaving an estate of approximately $10,000,000. His next of lcin were his wife, Caryl B. Muehlstein, a sister, and four nieces and nephews. One of the decedent’s surviving nieces is Muriel Cohen, who assigned the claim that is the subject of this action to her husband, the plaintiff Leo Cohen.
The decedent bequeathed the-bulk of his estate to a foundation that he had created. The balance of his estate, with the exception of a few small legacies, was left in trust for the benefit of his wife.
The next of kin were dissatisfied with these dispositions.
On September 13, 1962, Muriel Cohen engaged Robert M. Trien, an attorney associated with the defendant in the practice of law, to represent her and protect her interest in the Muehlstein probate proceeding. Mr. Trien is the stepson of Viola A. Trien, a sister of Muriel Cohen and one of the decedent’s four nieces and nephews.
About two weeks later the sister and the nieces and nephews of the decedent met in the defendant’s office, and at that time engaged him to represent them in the probate proceeding. Mr. Handelman was substituted for Mr. Trien as attorney for Mrs. Cohen in the probate proceeding, by stipulation dated September 28, 1962. Concurrently Mrs. Cohen entered into a written agreement with the defendant retaining him “to represent me with respect to such claim or claims as I may have in the estate of Herman Muehlstein ’ ’, agreeing to pay him ‘ ‘ a fee amounting to Thirty (30%) Percent of any monies — obtained by me, over and above such specific legacies to which I may become entitled pursuant to the terms of the Last "Will & Testament of ■ the decedent ’ ’, and also agreeing to pay him “for disbursements incurred in the prosecution of this claim.”
Later that same day a conference took place at Mr. Handel-man’s office between his clients, including Muriel Cohen, and Caryl Muehlstein, the decedent’s widow, and Norman Sarnoffi, her attorney.
An agreement was reached at the conference which was reduced to writing and executed the same day, September 28, *803 1962, which provided in part that the decedent’s sister and his nieces and nephews would refrain from filing objections to the decedent’s will and that they would “ assist Caryl Muehlstein in the prosecution of her objections under Section 17 or under any other appropriate section of the Decedent Estate Law.” Other significant provisions of this agreement are discussed subsequently in this opinion. Here it should be noted in passing that it provided in substance for the division among the parties of any increment resulting from a proceeding instituted on behalf of Mrs. Muehlstein as if the increment accrued by virtue of section 17 of the Decedent Estate Law; that the parties would jointly bear the costs and disbursements of such proceedings; and that “ any proceedings in furtherance of their interests shall be through Norman Sarnoff, Esq., and Philip Handelman, Esq., attorneys for the parties.”
On the same day, September 28, 1962, the sister and the nieces and nephews of the decedent, including Mrs. Cohen, entered into a separate agreement, prepared by Mr. Handelman, which provided in substance that any benefit derived as a result of the prospective proceedings in the Muehlstein estate would be divided among them in the proportion of % to the decedent’s sister and % to each of his nieces and nephews, including Muriel Cohen, and that costs and disbursements “incurred in connection with such representation by counsel as aforesaid, shall be borne by the parties hereto in the same proportion as the aforementioned distribution. ’ ’
Proceedings were then instituted in the Surrogate’s Court, and an action was commenced in the Supreme Court, in each of which the decedent’s widow was represented by Mr. Handelman and Mr. Sarnoff. The primary thrust was in the Surrogate’s Court based on sections 17 and 18 of the Decedent Estate Law, as a result of which a settlement between Mrs. Muehlstein, the executors of the estate, and the foundation was reached, committed to writing, and executed on December 16, 1964.
This agreement between the executors, the widow, the Herman Muehlstein Foundation, and the attorneys for the contracting parties, including Mr. Sarnoff as attorney for Mrs. Muehlstein in her capacity as executrix, and Mr. Handelman, Mr. Trien, and Mr. Sarnoff as attorneys for Mrs. Muehlstein in her capacity as widow of the decedent, settled the section 17 and section 18 proceedings in the Surrogate’s Court.
In part the agreement provided for the payment to Mr. Handelman “as attorney for Caryl B. Muehlstein” of $325,-000, one half to be received by the widow and the remaining half by the other distributees, and for the payment to Mr. *804 Handelman of $100,000 “ for the services rendered by him and all other counsel associated with him as counsel in the construction portion of the above-entitled proceedings.”
As a result of this settlement, Muriel Cohen was entitled to receive, pursuant to the agreement that had been executed on September 28, 1962, % of the one-half share of $325,000 allocated under the settlement agreement of December 16, 1964 to the decedent’s distributees other than his widow, less 30% thereof payable to Mr. Handelman in accordance with the retainer agreement of September 28, 1962, noted above. The gross amount of Mrs. Cohen’s % share of this settlement was $27,083.33. The net amount thereof, after deducting Mr. Handelman’s fee of 30% was $18,958.33. A check for this amount was forwarded to Mrs. Cohen by letter of Mr. Handel-man dated January 25, 1965. The same letter advised Mrs. Cohen that a general release from her to Mrs. Muehlstein, executed by Mrs. Cohen on' December 18, 1964, had been forwarded by Mr. Handelman to Mrs. Muehlstein.
This outline of the relevant proceedings in the Muehlstein estate leads to the specific facts that are the subject of the present action.
It will be recalled that the agreement dated September 28, 1962, between the decedent’s widow and his sister, nieces and nephews, provided in part that “ The parties shall jointly bear the costs and disbursements incurred in proceedings under Sec. 17 or any other appropriate section, in the same proportion as they would by their distributive shares under Section 17.”
On June 12, 1963, Mr. Handelman addressed a letter to Muriel Cohen requesting the payment of $1,666.66 as her share of disbursements incurred in connection with the Muehlstein estate. That letter stated the following: “ In connection with the prosecution of the claim in the above named estate, commitments for disbursements have been incurred to the extent of $20,000. In accordance with paragraph “ 5 ” of the Agreement of September 28, 1962 between you, the widow Caryl Muehlstein and the other next of kin, your proportionate share is one-twelfth of $20,000, to wit, $1,666.66.
“ Mrs. Muehlstein has forwarded her share and we would appreciate your doing likewise at your earliest convenience so that we may proceed with all diligence.”
At this point, Muriel Cohen’s husband, Leo Cohen, telephoned to Mr. Handelman and asked for an itemized statement of disbursements: There is a dispute as to what was said in the course of this conversation but the result was that the request *805 was rejected. The defendant’s position, as stated in his “ Post-trial Memorandum ’ ’, is that Mr. Cohen was told that the disbursements were a matter between the defendant and Mrs. Muehlstein; that Mrs. Cohen had no right to question the legitimacy of disbursements; that Mrs. Muehlstein controlled the litigation, and that the defendant was simply requesting that Mrs. Cohen comply with her agreement with Mrs. Muehlstein.
On July 11, 1963 a check for $1,666.66 was sent to Mr. Handelman by Leo Cohen.
After the settlement of the Surrogate’s Court proceedings in December, 1964 and the delivery to Muriel Cohen of her distributive share of the settlement, demands were made in writing by Leo Cohen addressed to Mr. Handelman requesting, as stated in a letter dated April 6, 1965, “ an itemized list of disbursements incurred — and a proportionate refund in the event that they total less than $20,000.” The refusal to comply led to the institution of the present action.
1. The substantive question here is whether or not the defendant is obligated to furnish the requested information.
The plaintiff’s position is that the relationship between Muriel Cohen and the defendant was that of client and attorney. As an attorney, plaintiff argues, the moneys entrusted to the defendant are trust funds with respect to which he has a duty to account. While contending that the disbursements advanced on behalf of Muriel Cohen were given in connection with an attorney-client relationship, the defendant also urges that it is immaterial whether the moneys were given to the defendant as part of such a relationship, on the ground that when a person acquires property because he occupies a fiduciary or confidential relationship, there is a disputable presumption of fraud, which presumption may be rebutted by showing the entire fairness of the transaction.
The defendant argues that, despite the alternative theories on which the plaintiff predicates the right to inquire how the $20,000 was spent, they ‘ ‘ boiled down to a claim that Mrs. Cohen— has the right, as a client, to inquire into the question of in what manner disbursement money given to her lawyer was utilized.” On this subject, as already indicated, it is the defendant’s position that he did not act as attorney for the plaintiff in the proceeding which gave rise to the disbursements. He urges that the disbursements were advanced by the plaintiff pursuant to an agreement with Mrs. Muehlstein under the terms of which the plaintiff agreed to bear a portion of Mrs. Muehlstein’s disbursements and, therefore, that the plaintiff has no *806 right to request the defendant to account to her for those disbursements.
Since the essential question is whether there was a fiduciary or confidential relationship between Mrs. Cohen and the defendant, I agree with the defendant that the real issue here is whether Mr. Handelman did act as attorney fo.r Mrs. Cohen.
On this subject, as noted above, at the conclusion of the crucial meetings on September 28, 1962, the decedent’s sister and his nieces and nephews, including Mrs. Cohen, agreed not to press objections to the probate of the will to assist Mrs. Muehlstein in the prosecution of her objections under section 17 and 18 of Decedent Estate Law.
The defendant argues that the usual indicia marking the relationship between client and attorney were missing after the agreement of September 28, 1962 was executed. As stated in his memorandum: ‘ ‘ Mrs. Cohen could not control any aspect of the litigation, including disbursements ”; “ she had no say as to what claims would be brought and when they would be brought ”; “she could not discharge the defendant from his duties as counsel in the various claims that were being brought and which gave rise to the disbursements “ she did not have the right to substitute other counsel for the defendants in the various lawsuits in connection with which the disbursements were advanced”; “ she did not have the right to control the form, manner or speed of the litigation”; “ she had no right to settle the litigation”; “her consent to the settlement that was ultimately reached was not sought, and she had no right to stop any settlement on the ground that it was not to her liking or, indeed, on any ground.”
These are untested contentions in this case relating to negative aspects of the attorney-client relationship. On the positive side it appears that Mr. Handelman performed his services well and did what a lawyer should do. He advanced and protected the interests of all the next of kin and none of them challenged his efforts.
Assuming, however, that all of these contentions are correct, it is nevertheless my view that Mr. Handelman acted as Mrs. Cohen’s attorney from September 28, 1962 until January 25, 1965, when he forwarded to her a check of $18,958.33 representing her distributive share of the Muehlstein estate settlement.
The critical date in the determination of the relationship of Mx. Handelman and Mrs. Cohen is September 28, 1962.
In effect it would appear that the defendant’s position is that he was retained to represent Mrs. Cohen on September 28, 1962 and ceased to .represent her as attorney on the same day when *807 lie was designated to act with Mr. Sarnoff as cocounsel for Mrs. Muehlstein.
At this point two cases may be noted dealing with the commencement and the termination of the client-attorney relationship.
In Sheehan v. Erbe (103 App. Div. 7, 9) it was said with regard to the commencement of the relationship that: “To establish this relation of attorney and client, it is not necessary that the attorney should have appeared as attorney in legal proceedings. Where it appears that an attorney is consulted to extricate a person from his difficulties., and that the relation commenced because of the position held by the attorney, and the attorney undertakes to act for the person consulting him, the relation of attorney and client exists ’ ’.
Insofar as termination is concerned, the relationship ends when its objective has been attained. As stated in Bathgate v. Haskin (59 N. Y. 533, 535): “ The authority of an attorney who is employed to prosecute or defend a suit in the absence of special circumstances, continues by virtue of his original retainer, until it is finally determined. The contract of the attorney is entire, and the service he is to render is essentially single although it may require distinct steps ’ ’.
Corpus Juris Secundum (vol. 7, Attorney and Client, p. 940) sums up the law relative to the termination of the relationship in this way: “ Although it may be sooner terminated by intervening cause, in the absence thereof, the relationship of attorney and client ordinarily continues until the accomplishment, fulfillment, or end of the object, suit or business for which the attorney was employed, and thereupon the relation and employment terminates and comes to an end.”
In the present case, Mr. Handelman became involved in the Muehlstein estate by virtue of the fact that he was retained by the sister, nieces and nephews of the decedent, including Mrs. Cohen, for that purpose. The objective stated in the retainer with Mrs. Cohen was “to represent me with respect to such claim or claims as I may have in the Estate of Herman Muehlstein. ’ ’
However able Mr. Handelman may be, and from his accomplishment in the Muehlstein estate proceedings it would appear that he is very able, it is nevertheless a reasonable conclusion that he was designated to act as cocounsel for Mrs. Muehlstein because he represented the interest of the decedent’s sister, nieces, and nephews. Mrs. Muehlstein did not wish her husband’s testamentary capacity to be challenged. In that circumstance Mr. Handelman’s acceptance, as cocounsel for Mrs. *808 Muehlstein was a means of inducing his clients to relinquish their right to contest the probate. In consideration of an agreement by the widow to share the proceeds of recovery or settlement in the section 17 and 18 proceedings, the sister, nieces, and nephews agreed to refrain from filing objections to the will. Mr. Handelman’s participation was a way of facilitating agreement upon a mutually acceptable approach to litigation with the estate’s representatives inasmuch as his presence in that capacity gave his clients the assurance that his collaboration with Mrs. Muehlstein’s attorney would advance and protect their interests.
The course of action adopted on September 28, 1962 .represented a balancing of considerations and the resultant conclusion that this was an appropriate method of achieving results for the sister, the nieces, and the nephews of the decedent as well as his widow. The agreement of September 28, 1962, in which Mrs. Muehlstein was a participant did not therefore, in my opinion, terminate the defendant’s representation of Mrs. Cohen as an attorney. It was a vehicle adopted as a method of achieving a mutually desired result, embodying, insofar as Mrs. Cohen and Mr. Handelman are concerned, the continuation of a relationship established between them earlier that day. That the form adopted was the institution of proceedings in the name of Mrs. Muehlstein did not change the substantive purpose of the proceedings, which was to benefit the remaining next of kin as well as the widow. The objective at the close of the day on September 28, 1962, was the same as it was at the beginning of that day. It continued to be the establishment of a claim or claims against the estate of Herman Muehlstein and the effectuation of recovery by way of suit, settlement or otherwise.
That the relationship of attorney and client continued after the execution of the agreement with Mrs. Muehlstein is supported by the text of the writings in the case.
The agreement of September 28, 1962 between the widow and the remaining next of kin in which the latter relinquished their right to contest the probate proceeding provides in paragraph 6 that “ The parties agree that any proceedings in furtherance of their interests shall be through Norman Sarnoff, Esq. and Philip Handelman, Esq., as attorneys for the parties.”
There is no intimation in this provision that Mr. Handelman’s representation of Mrs. Cohen had ended. On the contrary, it is a declaration that he continues to act for the sister, nieces, and nephews of the decedent, including Mrs. Cohen, as well as the widow “ in furtherance of their interests ” and “ as attor *809 neys for the parties ” — not in the singular, but in the plural.
The further agreement executed on September 28, 1962 between the sister, the nieces, and the nephews of the decedent indicates that was the intent, in its recital that they ‘ ‘ have engaged counsel for the purpose of protecting and prosecuting their interests and rights in the Estate of Herman Muehlstein ’ ’ and in the further recital that they ‘ ‘ desire to clarify and agree upon their respective .rights in the proceeds that may be derived from the efforts of counsel as aforesaid.”
This, too, is an agreement prepared by Mr. Handelman and demonstrates the view of counsel and the parties, as it existed on the day an agreement was reached with Mrs. Muehlstein and her attorney, that he continued to act as counsel for the sister, nieces, and nephews of the decedent rather than that the relationship terminated on that day.
While not conclusive, it is nevertheless significant in determining the relationship between Mr. Handelman and Mrs. Cohen that he deducted from her share of the settlement a fee of 30%, another mark indicative of the continuing relationship of attorney and client. Its particular significance in this case, stems from the fact that the 30% deducted by the defendant from Mrs. Cohen’s distributive share of the settlement is based on the retainer agreement signed by her September 28, 1962. It is persuasive that if that agreement continued in effect for the purpose of authorizing the deduction of the 30% fee it also remained effective for the purpose of establishing the continuing relationship of attorney and client.
In his letter of January 25, 1965 to Mrs. Cohen, written prior to the commencement of this litigation, in which the defendant forwarded to Mrs. Cohen her distributive share of the settlement, he concluded with the sentence, “We are happy to have been able to serve you ” — a reflection of his concept of his position at that time and another indication that the defendant’s present position is retrospective rationalization.
Based on these considerations it is my opinion that the relationship of attorney and client continued between Mrs. Cohen and Mr. Handelman until the settlement of the Surrogate’s Court proceedings was concluded and its objective was achieved.
Here it should be briefly added, in view of the foregoing conclusion, that the release from Mrs. Cohen to Mrs. Muehlstein did not relieve the defendant of his obligation as an attorney to his client.
Accordingly, as I see it, the defendant is entitled to an explanation concerning the disbursements.
*810 I use the word explanation at this point, since the procedural issue is whether this action is for money had and received or whether it is an action in equity for an accounting with respect to which the Civil Court does not have jurisdiction.
It is to that question that this opinion is now addressed.
2. The basis of the plaintiff’s claim for moneys had and received, amounting to $1,666.66 is the letter addressed by the defendant to Mrs. Cohen on June 12, 1963, quoted above in which the defendant stated that ‘ ‘ commitments for disbursements have been incurred to the extent of $20,000 ’ ’ and that 1 ‘ your proportionate share is one twelfth of $20,000, to wit, $1,666.66.”
In his testimony the defendant stated that at the time the letter of June 12, 1963 was written the actual amount of disbursements that had been advanced was between $2,000 and $3,000 and that the balance of the $20,000 mentioned in his letter represented an estimate of disbursements to be incurred.
The procedural question is whether an action for money had and received is an appropriate way of securing the relief requested in that letter [by Leo Cohen, dated April 6, 1965] and whether the present action is within the scope of the Civil Court’s jurisdiction.
The action for money had and received, although an action at law, is equitable in its nature and is governed by equitable principles. As stated in Town of Bleecker v. Balje (138 App. Div. 706, 708) it is an action “of broad scope and the outgrowth of the efforts of courts of law to enforce equitable obligations.” The doctrine upon which the action is based is that “money in the hands of one person, to which another is equitably entitled, may be recovered in a common-law action by the equitable owner upon an implied promise arising from the duty of the person in possession to account for and pay over the same to the party beneficially entitled.” (Roberts v. Ely, 113 N. Y. 128, 131.) (See, also, Town of Bleecker v. Balje, supra; Effel Realty Corp. v. City of New York, 165 Misc. 176; 4 Carmody-Wait 2d, New York Practice, ch. 29 ; 58 C. J. S., Money Received, § 1.)
The fact that the remedy embraces cases that originally were only within the scope of courts of equity or that there is a relation of trust between the parties does not prevent disposition by courts of law. The line separating those causes that are cognizable in courts of equity only as distinguished from those that come within the jurisdiction of courts at law is determined by the nature of the relief that is required. As stated in Roberts v. Ely (113 N. Y. 128, 131, supra), recovery may be *811 had in this form of action, “ subject to the restriction that the mode of trial and the relief which can be given in a legal action are adapted to the exigencies of the particular case, and that the transaction is capable of adjustment by that procedure, without prejudice to the interest of third persons.”
In the present instance an action at law is appropriate because the relief which can be given through the processes of the Civil Court ‘ ‘ is adapted to the exigencies ’ ’ of this case and ‘ ‘ is capable of adjustment by that procedure ”. This case presents no problem of procedure or relief with which the Civil Court cannot deal. (See “4” below.)
3. The defendant’s offset raises the final issue to be considered in this case.
It appears that Mrs. Cohen’s estranged husband, the plaintiff in this action, obtained possession of the check that had been mailed to Mrs. Cohen in payment of her distributive share of the Muehlstein estate settlement and, without authorization, indorsed it. The offset is based upon services rendered by the defendant for Mrs. Cohen in securing for her the return of that check from her husband.
The question is whether the defendant’s claimed offset can be asserted in this action.
That issue arises as result of the .rule that ‘ ‘ a trustee cannot set off his own personal claim against the fund he holds for his cestui.” (People ex rel. Belleci v. Klinger, 164 Misc. 530, 538.) (See, also, Harris v. Elliott, 24 App. Div. 133; Terry v. Bale, 1 Dem. 452; Matter of Schwartzmann, 174 Misc. 834; Matter of Proffen, 175 Misc. 447; Beecher v. Vogt Mfg. Co., 227 N. Y. 468.)
In the present case the moneys delivered to the defendant, as requested by him, in payment of his commitments for disbursements, including the $1,666.66 paid by Mrs. Cohen for that purpose, constituted, in effect, a trust fund to be applied to the payment of disbursements incurred in connection with the Muehlstein litigation. The asserted offset, however, is based upon services that are unrelated to the services in the performance of which the requested disbursements were incurred.
The reason generally given for the rule, as stated in 8 ALB. 2d 209, is that:
‘ ‘ The terms ‘ setoff ’ and ‘ counterclaim ’ imply reciprocal demands existing between the same persons at the same time, and it is a well-settled general rule that if a demand or claim is to be set off or counterclaimed in an action, the setoff or counterclaim and the action must be between the same parties, and between them in the same capacity * * *
*812 ‘ ‘ While some limitations to this rule, real or seeming, have been made in a few instances, it may be safely stated that, generally, it is applicable in principle so as to deny the right of a trustee to withhold trust payments from a beneficiary in order to obtain payment of a personal debt of the latter to him, or to set off such debt against payment to the beneficiary. ’ ’
The rule is also sound as a matter of policy, it seems to me, because it helps to preserve the integrity of the fund.
4. It will be recalled that the trial was adjourned for the purpose of enabling the court to consider the question of whether the complaint alleges a valid cause of action requiring the defendant to itemize the disbursements in the Muehlstein estate litigation and as to whether the defenses have merit.
For the reasons stated above, the defendant is directed to serve upon the plaintiff’s attorneys, Avifchin 20 days after the service of a copy of this order -with notice of entry thereof, an itemized statement of all disbursements paid by the defendant in connection with the Muehlstein estate litigation, setting forth the date, the amount, the name of the payee and the purpose of each such disbursement.
It is further ordered that, within 20 days after the service of such statement, the plaintiff may, if so advised, by appropriate notice addressed to the court, a copy of which shall be served upon the defendant, request the court upon a proper showing, to fix a date for the continuation of the trial for the purpose of taking testimony concerning the application of the moneys received by the defendant, aggregating $20,000, for disbursements in connection with the Muehlstein estate litigation.